UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| B AND S EQUIPMENT CO., INC. | CIVIL ACTION |
| VERSUS | NO. 19-14769 |
| CENTRAL STATES UNDERWATER CONTRACTING, INC. | SECTION M (2) |

### ORDER & REASONS

Before the Court is a motion by plaintiff B&S Equipment Co., Inc. ("B&S"),[1] to remand this matter to the 25th Judicial District Court, Parish of Plaquemines, State of Louisiana. Defendant Central States Underwater Contracting, Inc. ("CSU") responds in opposition,[2] and B&S replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court concludes that B&S's motion should be denied because CSU did not waive its right to removal by filing an answer and counterclaim in state court before removing the case to federal court.

**I.   BACKGROUND**

This case involves a breach-of-contract claim arising from a failure to pay. According to B&S, on August 27, 2018, CSU approached B&S to supply manpower and equipment to support CSU's pipeline abandonment project (the "Project").[4] The parties entered into a contract (the "Contract"), B&S performed the Contract, and B&S eventually issued three invoices to CSU totaling $351,135.68.[5] To date, CSU has paid B&S only $150,000.00.[6] On October 16, 2019,

---

[1] R. Doc. 8.
[2] R. Doc. 9.
[3] R. Doc. 12.
[4] R. Doc. 1-8 at 2.
[5] *Id.* at 4.
[6] *Id.*

B&S filed the instant action in state court against CSU seeking damages for breach of contract, alleging that "[d]espite repeated amicable demand, [CSU] has failed to pay B&S anything toward the outstanding balance."[7] B&S claims that as a result of this breach, it "has incurred, and continues to incur, significant costs and damages."[8] B&S served its state-court petition on CSU on December 2, 2019.

On December 23, 2019, CSU filed an answer and reconventional demand (*i.e.,* counterclaim) in state court, telling a different story than B&S.[9] According to CSU, upon its contacting Scott Ryals of B&S on August 27, 2018, about the Project, B&S proposed a flat rate of $7,500 per day and indicated that B&S could commence work on September 7, 2018 (which CSU refers to as the first attempt to mobilize for repair of the pipeline, or "First Mob Attempt").[10] CSU accepted B&S's terms and "stressed to B&S that time was of the essence."[11] On September 6, 2018, B&S informed CSU that its charges would be higher than previously agreed.[12] Then on September 10, 2018, three days after B&S said it could commence work on the Project, Ryals informed CSU that B&S's boat was inoperable due to mechanical problems.[13] When B&S finally arrived to the job site on September 13, 2018, the Project was "canceled due to the unsafe conditions caused by the rising river."[14] On September 28, 2018, after the unsafe conditions subsided, CSU contacted B&S about remobilizing to repair the pipeline ("Second Mob Attempt"), with Ryals assuring CSU it would only take "two to three days to Mob in."[15] On October 9, 2018,

---

[7] *Id.*
[8] *Id.*
[9] R. Doc. 1-10.
[10] *Id.* at 4.
[11] *Id.*
[12] *Id.*
[13] *Id.* at 4-5.
[14] *Id.* at 5.
[15] *Id.*

CSU informed B&S that the Second Mob Attempt would begin on October 16, 2018.[16] According to CSU, B&S invoiced CSU for the First and Second Mob Attempts despite B&S's failure to meet its obligations under the Contract.[17] In its answer and reconventional demand, CSU alleges B&S breached its duties under the Contract "[t]hrough its actions and inactions ... including but not limited to failing to arrive at the job site on time during the First Mob Attempt and ongoing delays on both the First Mob Attempt and the Second Mob Attempt."[18] CSU claims that as a result of this breach, it "has incurred significant costs and damages."[19]

Additionally, CSU alleges it lost "valuable contracts" for 2019 with its clients Enterprise Products ("Enterprise") and Marathon Petroleum ("Marathon") as a result of statements made by Ryals and B&S, who allegedly contacted both companies to inform them that "CSU does not pay its bills" and to demand that they "stop working with CSU."[20] According to CSU, Ryals and B&S knew of these existing contracts at the time Ryals made these "defamatory and disparaging statements … in bad faith and/or with malicious intent" to both Enterprise and Marathon "with the intent to cause CSU to lose work" and, as a result of these statements, CSU lost its 2019 contracts with both clients.[21] CSU claims, then, that B&S tortiously interferred with CSU's contracts with Enterprise and Marathon.

On December 27, 2019, less than 30 days following the date of service of B&S's petition on CSU (*i.e.,* December 2, 2019), CSU removed this action to this Court alleging diversity subject-matter jurisdiction under 28 U.S.C. § 1332.[22] CSU asserts that complete diversity exists between the properly joined parties, because B&S is a citizen of Louisiana, CSU is a corporation organized

---

[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.* at 6.
[22] R. Doc. 1 at 1.

under the laws of Kansas with its principal place of business located in Texas, and the amount in controversy exceeds $75,000, exclusive of interest and costs.[23]

## II.   PENDING MOTION

On January 14, 2020, B&S filed the instant motion to remand arguing that CSU waived its right to removal by filing "its answer and permissive reconventional demand at a time wh[en] this matter was clearly removable."[24]  According to B&S, its principal demand seeks damages for CSU's alleged breach of contract due to CSU's failure to pay B&S, while CSU's counterclaim (reconventional demand) for tortious interference with contract "seeks damages for actions allegedly occurring after the project at issue and the value of contracts allegedly lost in 2019," not the Contract between CSU and B&S concerning the Project.[25]  B&S argues that CSU's reconventional demand is permissive because final judgment on B&S's principal demand would not dispose of CSU's claim against B&S for Ryals's allegedly defamatory and disparaging statements that interfered with CSU's contracts with Enterprise and Marathon.[26]

CSU opposes the motion, arguing that it did not waive its right of removal by filing "its notice of removal only *four* days after filing its answer" in the state court proceeding.[27]  CSU adds that "if CSU continued investigating to determine whether [it] had a right to remove" and "chose not to file an answer ... CSU might [have] face[d] a motion for default judgment in state court."[28]  Further, CSU argues that its reconventional demand is compulsory because B&S's alleged tortious interference with CSU's outside contracts arose out of the same transaction or occurrence (*viz.,* the Project) that is the basis of this action.[29]

---

[23] *Id.* at 2.
[24] R. Doc. 8 at 2.
[25] R. Doc. 8-1 at 6.
[26] *Id.*
[27] R. Doc. 9 at 4-5 (emphasis in original).
[28] *Id.* at 4.
[29] *Id.* at 7.

**III. LAW & ANALYSIS**

**A. Remand Standard**

A defendant may remove from state court to the proper United States district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Because federal courts have limited jurisdiction, the removal statute is strictly construed, and any ambiguities are construed against removal and in favor of remand. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The party seeking removal has the burden of establishing that federal jurisdiction exists and that removal was proper. *Id.* The federal court's jurisdiction is examined as of the time of removal. *See Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996).

**B. Waiver of the Right to Removal**

B&S contends that CSU waived its right to removal by filing its answer and counterclaim in state court before removing the case to federal court. Under well-established precedent, however, CSU did not waive its right to removal by filing an answer in state court. As explained by another section of this Court:

> The Fifth Circuit has held that a defendant may waive its right to removal "by proceeding to defend the action in state court or otherwise invoking the processes of that court." *Brown v. Demco, Inc.*, 792 F.2d 478, 481 (5th Cir. 1986). However, a waiver of the right to remove must also be clear and unequivocal. *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 428 (5th Cir. 2003). A party has not waived its right to removal even though it has participated in state proceedings, so long as the party has not sought an adjudication on the merits. *Id.* Consistent with this holding, the Eastern District repeatedly has held that an answer is not sufficient to constitute as waiver. *See Biggers v. State Farm Mut. Auto. Ins. Co.*, 1992 WL 266166, at *2 (E.D. La. 1992); *Demourelle v. Bond*, 1999 WL 203269, at *1 (E.D. La. 1999); *Gallo v. Elmotores, Inc.*, 1998 WL 661485, at *1 (E.D. La. 1998).

*Green v. Great W. Cas. Co.*, 2019 WL 1767269, at *2 (E.D. La. Apr. 22, 2019).

Likewise, "defendants that have merely ... answered and asserted compulsory counterclaims have generally not been found to have waived the right to remove." *Mastronardi*

*v. Wells Fargo Bank, N.A.*, 2015 WL 5472924, at *3 (N.D. Tex. Sept. 17, 2015); *see Harris v. Brooklyn Dressing Corp.*, 560 F. Supp. 940, 942 (S.D.N.Y. 1983). "However, a party who voluntarily submits to the jurisdiction of a state court by filing a permissive counterclaim thereby waives the right of removal." *Harris*, 560 F. Supp. at 942 (citing *Bedell v. H.R.C. Ltd.,* 522 F. Supp. 732 (E.D. Ky. 1981); *George v. Al-Saud*, 478 F. Supp. 773 (N.D. Cal. 1979)). Thus, B&S asks this Court to "focus on whether CSU's reconventional demand is compulsory or permissive in nature" and, because, in B&S's view, it is permissive, to find that CSU has waived its right to removal.[30]

### C. The Nature of CSU's Reconventional Demand

CSU asserted its reconventional demand pursuant to Louisiana law. Article 1061 of the Louisiana Code of Civil Procedure governs reconventional demands, both permissive and compulsory, and provides:

> A. The defendant in the principal action may assert in a reconventional demand any causes of action which he may have against the plaintiff in the principal action, even if these two parties are domiciled in the same parish and regardless of connexity between the principal and reconventional demands.
>
> B. The defendant in the principal action ... shall assert in a reconventional demand all causes of action that he may have against the plaintiff that arise out of the transaction or occurrence that is the subject matter of the principal action.

La. Code Civ. P. art. 1061. Article 1061 and the doctrine of *res judicata*, set forth in La. R.S. 13:4231, are closely related. *Colbert v. Brennan*, 2012 WL 12874157, at *3 (E.D. La. Oct. 9, 2012). "The doctrine of *res judicata* was substantially changed by La. Acts 1990, No. 521, effective January 1, 1991," and Article 1061 was "amended in order to effectuate this change." *Hy-Octane Invs., Ltd. v. G&B Oil Prods., Inc.*, 702 So. 2d 1057, 1060 (La. App. 1997).

> The purpose of the change in the doctrine of *res judicata* was to require the plaintiff "to seek all relief and to assert all rights which arise out of the same transaction or

---
[30] R. Doc. 14 at 1-2.

6

> occurrence." Comment (a) to La. R.S. 13:4231. This serves the purpose of judicial economy and fairness. The focus is on the transaction or occurrence as opposed to a cause of action. *See* Comment (a) to La. R.S. 13:4231.
>
> In furtherance of this objective, judicial efficiency is also served "by requiring the defendant through a compulsory reconventional demand to assert all causes of action he may have against the plaintiff that arise out of the transaction or occurrence that is the basis for the plaintiff's action." Comment (a) to Article 1061.

*Id.*

"Louisiana courts applying Article 1061 have not defined what the phrase 'arise out of the transaction or occurrence' requires and therefore when a reconventional demand is compulsory," although "cases interpreting the statute suggest that something more than some shared facts is required." *Nayani v. Horseshoe Entm't*, 2007 WL 1288047, at *2 (N.D. Tex. May 2, 2007); *see Hy-Octane Invs.*, 702 So. 2d at 1060. Thus, "[w]hat the transaction or occurrence is that is the subject matter of the litigation, or the principal demand or action, or the original action, has been determined on a case-by-case basis …." *Hy-Octane Invs.*, 702 So. 2d at 1060. "The official commentary to Article 1061 explains that the purpose of the rule is to prevent multiplicity of suits and encourage the settlement of all disputes between the parties at one time, and that the practice has proved satisfactory in federal practice." *Nayani*, 2007 WL 1288047, at *1 (internal quotation, alterations, and citation omitted).

"When an article of the Louisiana Code of Civil Procedure is based on a federal rule, decisions of the federal courts can be used for guidance." *Hy-Octane Invs.*, 702 So. 2d at 1060 (citing *Scott v. Hosp. Serv. Dist. No. 1*, 496 So. 2d 270 (La. 1986)). Article 1061 "closely resembles" Rule 13 of the Federal Rules of Civil Procedure, especially in providing "that compulsory reconventional demands must 'arise out of the transaction or occurrence that is the subject matter of the principal action.'" *Nayani*, 2007 WL 1288047, at *1. Therefore, "federal cases interpreting Rule 13 are germane to [the] interpretation of Article 1061." *Id.* at *2.

7

Rule 13 provides in pertinent part:

(a) **Compulsory Counterclaim.**

(1) *In General.* A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim:

(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and

(B) does not require adding another party over whom the court cannot acquire jurisdiction.

....

(b) **Permissive Counterclaim.** A pleading may state as a counterclaim against an opposing party any claim that is not compulsory.

….

Fed. R. Civ. P . 13. The Fifth Circuit has adopted the "logical relationship" test to determine whether a counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" under Rule 13(a). *Montgomery Elevator Co. v. Bldg. Eng'g Servs. Co.*, 730 F.2d 377, 380 (5th Cir. 1984). A logical relationship "requires more than an incidental relationship between the claims." *Rayburn v. Brooks*, 2009 WL 10678946, at *3 (M.D. La. Mar. 18, 2009) (citing *United States v. Aronson*, 617 F.2d 119, 121-22 (5th Cir. 1980)). Instead, a "logical relationship exists when the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendants." *Montgomery Elevator*, 730 F.2d at 380 (internal quotation omitted). Thus, a counterclaim is compulsory "if it arises out of the same aggregate of operative facts as the claim in the original demand." *New York Life Ins. Co. v. Deshotel*, 946 F. Supp. 454, 461 (E.D. La. 1996) (internal quotation and citations omitted).

B&S argues that CSU's counterclaim (reconventional demand) is permissive because "Ryals'[s] alleged tortious conduct" does not arise out of the transaction or occurrence that is the

8

subject matter of the principal action (*i.e.*, CSU's breach of the Contract), but rather arises out of actions "which allegedly took place after B&S'[s] completion of work" on the Contract.[31] Thus, according to B&S, judgment in favor of B&S on its principal demand "could have no *res judicata* effect on CSU's action for tortious interference with contract."[32]

But CSU insists that its counterclaim is compulsory. Because "B&S'[s] disparaging statements to Enterprise and Marathon were motivated by and 'flowed directly from' its dissatisfaction with CSU's performance of the Contract," and because the "Contract is the common nucleus of all the claims in CSU's reconventional demand" and "the bedrock of B&S'[s] claims against CSU," CSU says its reconventional demand arises from the same transaction or occurrence as B&S's principal demand.[33] According to CSU, "Enterprise hired CSU for the Project, *and* B&S and Mr. Ryals were aware that the Project belonged to Enterprise."[34] CSU argues that the Contract "motivated Mr. Ryals to contact Marathon and Enterprise in the first place," and that during the phone calls in which Ryals "claim[ed] that CSU does not pay its bill[s]," he "specifically mentioned the Contract dispute between B&S and CSU as a basis for [his] demand" that each client stop working with CSU.[35] CSU further contends that during one phone call, Ryals and B&S "attempted to persuade Enterprise ... to exert pressure on CSU to pay B&S additional money for the Contract despite B&S'[s] breach."[36] Therefore, CSU maintains that its reconventional demand for tortious interference with contract bears a logical relationship to B&S's principal action and is properly characterized as compulsory.[37]

---

[31] R. Doc. 8-1 at 3.
[32] *Id.* at 6.
[33] R. Doc. 9 at 7.
[34] *Id.* at 2 (emphasis in original).
[35] *Id.* at 2-3.
[36] *Id.* at 2.
[37] *Id.* at 9.

9

The analysis of CSU's counterclaim is not much aided by the parties' arguments. Neither party bothers to call the Court's attention to the fact that the reconventional demand consists of two different claims: one for B&S's own alleged breach of the Contract, and the other for B&S's tortious interference with contract.[38] On the one hand, there is no doubt that CSU's breach-of-contract claim arises from the same transaction or occurrence as B&S's breach-of-contract claim because each asserts breach of the same Contract. B&S alleges CSU breached the Contract by its failure to pay for the equipment and services B&S provided, and CSU alleges B&S breached the Contract by its failure to perform its contractual duties on time. Given these circumstances, Louisiana law supports the conclusion that CSU's counterclaim for breach of contract should be deemed compulsory in nature. For example, in *Hy-Octane Investments, Ltd. v. G&B Oil Products, Inc.*, 702 So. 2d at 1061, because the court determined that the plaintiff's claim for breach of contract and the defendant's reconventional demand for wrongful termination of contract both arose out of the same motor fuel supply agreement, it concluded that the reconventional demand involved the same transaction or occurrence so was compulsory. *Id.*

On the other hand, whether CSU's tortious interference claim arises from the same transaction or occurrence as B&S's breach-of-contract claim is doubtful. While B&S's disparaging statements would not have occurred but for the parties' disputes over the Contract, they were hardly a necessary result of those disputes. Ryals took affirmative steps in reaching out to Enterprise and Marathon to ask that they cease their business with CSU. This conduct was separate and distinct from that underlying the disputes related to the Contract. Louisiana courts have concluded that a reconventional demand based on such separate and distinct conduct does not arise out of the same transaction or occurrence as the principal demand. For example, in

---

[38] R. Doc. 1-10 at 5-6.

*Nayani v. Horseshoe Entertainment*, 2007 WL 1288047, at *1-2, a federal court was faced with the question whether a claim in the lawsuit before it arose out of the same transaction or occurrence underlying a previously-filed state suit as would have required that the claim be brought as a compulsory reconventional demand in the state suit. The state suit involved Horseshoe's breach-of-contract claim against Nayani for failure to pay a debt and fulfill other contractual obligations, whereas the federal suit involved Nayani's negligence claims for Horseshoe's "alleged wrongful reporting of a null and void default judgment on Nayani's credit report." *Id*. at *3. The court held that Nayani's claims were "only peripherally related" to the claim in the state suit, explaining that while "the underlying debt that is the subject of the Louisiana lawsuit and the subsequently entered judgment in that case, [were] 'but for' causes of the dispute underlying the claims in [the federal] case, … the essential facts for proving the two claims [were] not so closely related that 'resolving both sets of issues in one lawsuit would yield judicial efficiency.'" *Id*. (quoting *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 210 (2d Cir. 2004)) (internal quotation omitted). Therefore, the court concluded that Nayani's claims in the federal suit did not arise out of the same transaction or occurrence that was the subject matter of the state suit and thus, because properly characterized as permissive, not compulsory, they were not required to be asserted in the state suit. *See also Rayburn*, 2009 WL 10678946, at *3-4 (although claims in a previously-filed state suit were "incidentally related" to those brought in the present federal suit and hence could provide "background or evidence of motive" for the claims in the federal suit, the suits involved "two entirely different sets of facts occurring at two different times" such that the claims in the federal suit were "not compulsory counterclaims in the state action").

Nevertheless, because one of the two claims asserted in CSU's reconventional demand is compulsory and the other permissive, it cannot be said that CSU clearly and unequivocally waived

its right to removal. In *Lang v. Mattison*, 2013 WL 2103145 (E.D. Ky. May 14, 2013), the court declined to find waiver where "at least a portion of the claims and counterclaims arise out of the same transaction or occurrence," since each party claimed that the other breached their contract. *Id*. at *5 ("Thus, at the very least, a portion of the defendants' counterclaim was compulsory."). The court also reasoned that evidence of the parties' business relationship was necessary to both sets of claims. The *Lang* court was persuaded that the waiver of defendants' right to removal should not be "so lightly inferred" where there is a "razor-thin call regarding the nature of the counterclaims." *Id*. Likewise, this Court sees the case before it as presenting a "razor-thin call regarding the nature of the counterclaims" where CSU has combined a permissive counterclaim with a compulsory counterclaim in bringing its reconventional demand. In these circumstances, waiver should not be so lightly inferred.[39] Therefore, this Court finds that CSU did not waive its right to removal.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that B&S's motion to remand (R. Doc. 8) is DENIED.

New Orleans, Louisiana, this 26th day of March, 2020.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[39] This is especially true where the permissive counterclaim asserted by CSU (tortious interference with contract) may not be valid. Louisiana recognizes "only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person." *9 to 5 Fashions, Inc. v. Spurney*, 538 So. 2d 228, 234 (La. 1989). CSU does not make a claim against any individual, much less one of its own corporate officers, but asserts its claim against B&S's corporate officer not for interference with any of B&S's contracts with third parties, but for interference with CSU's contracts with third parties. It would be the lightest of inferences to find that CSU waived its right to removal by bringing such a tenuous claim.