UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| B AND S EQUIPMENT CO., INC. | CIVIL ACTION |
| VERSUS | NO. 19-14769 |
| CENTRAL STATES UNDERWATER CONTRACTING, INC. | SECTION M (2) |

### **ORDER & REASONS**

Before the Court is a motion by plaintiff and defendant-in-counterclaim B&S Equipment Co., Inc. ("B&S") to dismiss[1] the tortious interference with contract claim brought against B&S by defendant and plaintiff-in-counterclaim Central States Underwater Contracting, Inc. ("CSU").[2] CSU responds in opposition.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court concludes that B&S's motion should be denied because CSU pleaded the elements of a claim for tortious interference with business relations, even though CSU mistitled it as a claim for tortious interference with contract.

**I.   BACKGROUND**

This case involves a breach-of-contract claim arising from a failure to pay. According to B&S, on August 27, 2018, CSU approached B&S to supply manpower and equipment to support CSU's pipeline abandonment project (the "Project").[4] The parties entered into a contract (the "Contract"), B&S performed the Contract, and B&S eventually issued three invoices to CSU totaling $351,135.68.[5] To date, CSU has paid B&S only $150,000.00.[6] On October 16, 2019,

---

[1] R. Doc. 14.
[2] R. Doc. 1-10 at 6 (CSU's counterclaim).
[3] R. Doc. 17.
[4] R. Doc. 1-8 at 2.
[5] *Id.* at 4.
[6] *Id.*

B&S filed the instant action in state court against CSU seeking damages for breach of contract, alleging that "[d]espite repeated amicable demand, [CSU] has failed to pay B&S anything toward the outstanding balance."[7] B&S claims that as a result of this breach, it "has incurred, and continues to incur, significant costs and damages."[8] B&S served its state-court petition on CSU on December 2, 2019.

On December 23, 2019, CSU filed an answer and reconventional demand (*i.e.,* counterclaim) in state court, telling a different story than B&S.[9] According to CSU, upon its contacting Scott Ryals of B&S on August 27, 2018, about the Project, B&S proposed a flat rate of $7,500 per day and indicated that B&S could commence work on September 7, 2018 (which CSU refers to as the first attempt to mobilize for repair of the pipeline, or "First Mob Attempt").[10] CSU accepted B&S's terms and "stressed to B&S that time was of the essence."[11] On September 6, 2018, B&S informed CSU that its charges would be higher than previously agreed.[12] Then on September 10, 2018, three days after B&S said it could commence work on the Project, Ryals informed CSU that B&S's boat was inoperable due to mechanical problems.[13] When B&S finally arrived to the job site on September 13, 2018, the Project was "canceled due to the unsafe conditions caused by the rising river."[14] On September 28, 2018, after the unsafe conditions subsided, CSU contacted B&S about remobilizing to repair the pipeline ("Second Mob Attempt"), with Ryals assuring CSU it would only take "two to three days to Mob in."[15] On October 9, 2018,

---

[7] *Id.*
[8] *Id.*
[9] R. Doc. 1-10.
[10] *Id.* at 4.
[11] *Id.*
[12] *Id.*
[13] *Id.* at 4-5.
[14] *Id.* at 5.
[15] *Id.*

CSU informed B&S that the Second Mob Attempt would begin on October 16, 2018.[16] According to CSU, B&S invoiced CSU for the First and Second Mob Attempts despite B&S's failure to meet its obligations under the Contract.[17] In its answer and reconventional demand, CSU alleges B&S breached its duties under the Contract "[t]hrough its actions and inactions ... including but not limited to failing to arrive at the job site on time during the First Mob Attempt and ongoing delays on both the First Mob Attempt and the Second Mob Attempt."[18] CSU claims that as a result of this breach, it "has incurred significant costs and damages."[19]

Additionally, CSU alleges it lost "valuable contracts" for 2019 with its clients Enterprise Products ("Enterprise") and Marathon Petroleum ("Marathon") as a result of statements made by Ryals and B&S, who allegedly contacted both companies to inform them that "CSU does not pay its bills" and to demand that they "stop working with CSU."[20] According to CSU, Ryals and B&S knew of these existing contracts at the time Ryals made these "defamatory and disparaging statements … in bad faith and/or with malicious intent" to both Enterprise and Marathon "with the intent to cause CSU to lose work" and, as a result of these statements, CSU lost its 2019 contracts with both clients.[21] CSU claims, then, that B&S tortiously interfered with CSU's contracts with Enterprise and Marathon.

On December 27, 2019, less than 30 days following the date of service of B&S's petition on CSU (*i.e.,* December 2, 2019), CSU removed this action to this Court alleging diversity subject-matter jurisdiction under 28 U.S.C. § 1332.[22] B&S moved to remand this action arguing that CSU waived its right to removal by filing in state court a permissive counterclaim for tortious

---

[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.* at 6.
[22] R. Doc. 1 at 1.

interference with contract.[23] The Court denied the remand motion, finding that CSU had not clearly and unequivocally waived its right to removal because one of the two claims CSU asserted in its state-court reconventional demand was a compulsory counterclaim (breach of contract) even though the other was a permissive counterclaim (tortious interference with contract).[24] In so holding, the Court noted that CSU's claim for tortious interference with contract may not be valid because:

> Louisiana recognizes "only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person." *9 to 5 Fashions, Inc. v. Spurney*, 538 So. 2d 228, 234 (La. 1989). CSU does not make a claim against any individual, much less one of its own corporate officers, but asserts its claim against B&S's corporate officer not for interference with any of B&S's contracts with third parties, but for interference with CSU's contracts with third parties.[25]

Understandably, the next day, B&S filed the instant motion to dismiss CSU's counterclaim for tortious interference with contract essentially for the reasons stated by the Court in this footnote from its prior Order & Reasons.[26] B&S argues that while Louisiana courts recognize a narrow cause of action for tortious interference with contract, it is limited to a claim against a corporate officer for interference with the contractual relations between his or her corporate employer and a third person or entity.[27] According to B&S, CSU's claim does not fit this mold because it is asserted against a corporate entity (B&S), not one of CSU's own officers.[28]

In opposition, CSU concedes that it does not have a claim for tortious interference with contract as outlined in *9 to 5 Fashions*, but argues that the claim so labeled should not be dismissed because it is actually a claim for tortious interference with business relations.[29] CSU argues that

---

[23] R. Doc. 8. In its motion to remand, B&S failed to address CSU's breach-of-contract counterclaim.
[24] R. Doc. 13.
[25] *Id.* at 12 n.39.
[26] R. Doc. 14.
[27] R. Doc. 14-1 at 3-5.
[28] *Id.*
[29] R. Doc. 17 at 5-6.

it has adequately stated such a claim against B&S for Ryals's deliberate and malicious interference with CSU's contracts with Enterprise and Marathon.[30]

## II.     LAW & ANALYSIS

### A.     Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

---

[30] *Id.*

plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (internal quotation marks and citation omitted)). Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2007); *see also Kitty Hawk Aircargo, Inc. v. Chao.*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the

allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

**B.     Tortious Interference with Contract or Business Relations**

Louisiana courts have recognized a cause of action for tortious interference with business relations. *IberiaBank v. Broussard*, 907 F.3d 826, 840-41 (5th Cir. 2018) (citing, *inter alia*, *Bogues v. La. Energy Consultants, Inc.*, 71 So. 3d 1128, 1134-35 (La. App. 2011)).[31] In *Bogues*, the court explained:

> The cause of action for tortious interference with business derives from La. [Civ. Code] art. 2315. Tortious interference is based on the principle that the right to influence others not to enter into business relationships with others is not absolute. Louisiana law protects the businessman from "malicious and wanton interference," though it permits interferences designed to protect legitimate interests of the actor. A plaintiff bringing a claim for tortious interference with business must ultimately show by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff. Significantly, it is not enough to allege that a defendant's actions affected plaintiff's business interests; the plaintiff must allege that the defendant actually prevented the plaintiff from dealing with a third party.

71 So. 3d at 1134-35 (citing *Junior Money Bags* and *Dussouy*; internal quotations omitted). The Fifth Circuit has recently enumerated the elements of a claim for tortious interference with business relations: "To succeed, a plaintiff must prove by a preponderance of the evidence that the defendant: (1) 'acted with actual malice'; (2) 'actually prevented the plaintiff from dealing with a third party'; (3) acted 'improperly,' i.e., not to 'protect legitimate interests'; and (4) caused damage to the plaintiff." *IberiaBank*, 907 F.3d at 841 (citations and footnote omitted).

---

[31] *See also Junior Money Bags, Ltd. v. Segal*, 970 F.2d 1 (5th Cir. 1992); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594 (5th Cir. 1981).

Yet, Louisiana courts view this cause of action with disfavor. *Bogues*, 71 So. 3d at 1135. "Louisiana's law 'is a significant deviation from the common law version of this tort, which requires intentional and improper conduct, but not a showing of ill will or actual malice." *Whitney Bank v. SMI Cos. Global, Inc.*, 949 F.3d 196, 207-08 (5th Cir. 2020) (quoting George Denegre, Jr., *et al.*, *Tortious Interference and Unfair Trade Claims: Louisiana's Elusive Remedies for Business Interference*, 45 LOY. L. REV. 395, 403 (1999)). The plaintiff must present evidence of "spite or ill will, which is difficult (if not impossible) to prove in most commercial cases in which conduct is driven by the profit motive, not by bad feelings." *Bogues*, 71 So. 3d at 1135 (quoting *JCD Mktg. Co. v. Bass Hotels & Resorts, Inc.*, 812 So. 2d 834, 841 (La. App. 2002)). Over the last two decades, courts in Louisiana, including the Fifth Circuit, have repeatedly observed that this standard is so difficult that "there appear to be no reported cases in which anyone actually has been held liable for the tort." *Id.*; *see also Whitney Bank*, 949 F.3d at 208.

That said, in its reconventional demand filed in state court before removal, CSU asserted a counterclaim it entitled "tortious interference with contract claim," not "tortious interference with business relations claim." Nevertheless, the nature of a claim is determined from the substance of the allegations, not the name it is given. *See, e.g., Blount v. Miss. Dep't of Human Servs.*, 2016 WL 4385059, at *3 (S.D. Miss. Aug. 16, 2016) (disregarding "negligence" label pleaded for claim, court ascertained that substance of allegations asserted intentional tortious conduct). In its tortious interference claim, CSU alleges:

> B&S and Mr. Ryals knew of existing contracts between CSU and Enterprise and CSU and Marathon, respectively. B&S and Mr. Ryals made defamatory and disparaging statements about CSU to Marathon and Enterprise with the intent to cause CSU to lose work from Enterprise and Marathon. The statements made by B&S and Ryals were made in bad faith and/or with malicious intent, and not to maximize profits for B&S and/or Mr. Ryals. As a result of Mr. Ryals' and B&S' actions, CSU lost contracts with Marathon and Enterprise.[32]

---

[32] R. Doc. 1-10 at 6.

As the Court previously observed, this paragraph does not state a claim for tortious interference with contract under *9 to 5 Fashions* and its progeny.[33] At this early stage of the proceeding, however, the allegations of CSU's counterclaim can be read to adequately state a claim, plausible on its face, for tortious interference with business relations. CSU alleges that B&S, through Ryals, acted improperly, making disparaging comments, with malicious intent, to CSU's contractual partners, Enterprise and Marathon, that caused CSU to lose those contracts. These allegations fit squarely the elements of a claim for tortious interference with business relations. *See, e.g., H&E Equip. Servs., Inc. v. St. Germain*, 2020 WL 1678327, at *3 (M.D. La. Apr. 6, 2020) (denying motion to dismiss claim for tortious interference with business relations, after reviewing complaint's factual allegations and observing that "it is inappropriate for the Court to delve into this factual inquiry at this stage in litigation"). It is of no moment that CSU's claim is mislabeled as one for tortious interference with contract because the substance alleges a claim for tortious interference with business relations, and the allegations fairly put B&S on notice of the claim. Still, to avoid future confusion, CSU is granted leave to file an amended counterclaim to properly label the claim and add any pertinent factual allegations.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that B&S's motion to dismiss (R. Doc. 14) is DENIED.

IT IS FURTHER ORDERED that CSU is granted leave to file an amended counterclaim within fifteen (15) days of the date of this Order & Reasons to properly label its claim for tortious interference with business relations and add any pertinent factual allegations.

---

[33] R. Doc. 13 at 12.n.39

New Orleans, Louisiana, this 23rd day of April, 2020.

                                                                    _____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE